**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **NEAL SANTANGELO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 14-cv-7723** |
| | ) | |
| **CROWN CORK & SEAL USA, INC., a** | ) | **Judge Sara L. Ellis** |
| **Pennsylvania corporation, and KEN** | ) | |
| **TUTIN, an individual,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**JOINT MOTION TO COMPEL**

Dated:  November 25, 2015

Respectfully submitted,

**NEAL SANTANGELO**

By:   /s/ Ruth I. Major

_____
            One of His Attorneys

Ruth I. Major
Renee C. Fell (ARDC No. 6312785)
THE LAW OFFICES OF RUTH I. MAJOR, PC
30 West Monroe, Suite 3550
Chicago, IL 60603
(312) 893-7544

**CROWN CORK & SEAL USA, INC.  and KEN TUTIN**

By:    /s/ Carol A. Poplawski

_____
            One of Their Attorneys

Carol A. Poplawski (#6192132)
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
155 North Wacker Drive, Suite 4300
Chicago, IL 60606
(312) 558-1220

## PLAINTIFF'S POSITION

Plaintiff, Neal Santangelo in support of his motion to compel, states as follows:

Plaintiff was a plant manager for Crown for 10 years before his employment was terminated. He worked in the aerosol division reporting to Defendant Ken Tutin. He and five other plant managers all worked in the same division at plants all producing aerosol products, all reported to Tutin, all worked under the same performance metrics, and all were compared to each other regularly by Tutin. Plaintiff has alleged that at the time his employment was terminated, other substantially younger plant managers who were performing at or below his performance level, as determined by the established metrics, were treated more favorably including not being terminated.

In order to obtain discoverable evidence for these issues, Plaintiff is seeking the following:

### A. Communications with other plant managers in Plaintiff's division and communications regarding plant performance

In this case, Defendant has focused on communications between Tutin and Plaintiff as purported evidence that Plaintiff was not meeting Tutin's expectations. However, that evidence should not be viewed in a vacuum. If the other plant managers received a larger volume of and/or more critical emails, such emails, in context, would support Plaintiff's position that he was performing equal to or better than younger plant managers who were not terminated. Moreover, one would expect Tutin reported the performance of the plants to his boss, Andy Bolton. Accordingly, Plaintiff requested that Defendants produce communications between (1) Tutin and the other plant managers; and (2) Tutin and Tutin's supervisor, Andy Bolton, concerning performance of plant managers. The exact content is as follows:

> 34. All communications to or from Defendant Tutin during the period from January 1, 2011 through June 1, 2013, including without limitation, communications with any plant manager in the Aerosol division, communications with Andy Bolton, and communications regarding any of the following subjects: spoilage, lean management, chuck, team building, 8th day, 15th day, projection,

1

downtime, HFI, near miss, assembly performance, temp, quality survey, injury, parts, training, favoritism, communication, gemba, EPR, and lean culture. (Ex. B, p. 4).

As a compromise, Plaintiff asked Defendants to run a search through Tutin's email account using search terms to help identify key emails. The search only identified 2,000 emails. To identify actual number of emails to be reviewed, Plaintiff requested that Defendants de-duplicate the search results and remove from the count any emails that appear in subsequent email strings. As a result, the number was reduced to 929 emails. Defendants have not raised the cost of production as a basis for not producing these documents likely because the cost is nominal. Moreover, Defendants do not have to review the documents before producing since they are generated by a search.

Plaintiff also requested communications between the plant managers and the Aerosol Division's Director of Corporate Quality (**Document Request No. 32**, Exhibit B, p. 3). In this case, purported quality issues at Plaintiff's plant supposedly led to Plaintiff's termination. McFadden wrote a memorandum about "quality issues" at Plaintiff's plant, sent it to Tutin by email, and copied Defendant's HR Manager. Defendants referenced this memorandum in its Position Statement to Illinois Department of Human Rights (IDHR) when trying to justify its termination decision. During the depositions, no Crown witness was able to explain why McFadden forwarded a memorandum addressing quality issues to HR. If McFadden was not sending communications about other plants with the same or worse problems, and not copying the HR manager on any communications about other plant managers, it would support Plaintiff's position that this email from McFadden is out of step with normal procedures and arguably intended solely to create a paper trail. The exact content of **Document Request No. 32** is as follows:

> 32. All communications to or from Doug McFadden during the period from January 1, 2012 through March 1, 2013.

Similar to Document Request No. 34, Plaintiff also asked that Defendants run a search through McFadden's email account using search terms that could be used to identify responsive information, de-duplicate the emails and remove from the count any emails that appear in subsequent email strings. This process reduced the search results from 1,000 emails to 772 emails. Defendants still refuse to produce these documents. Defendants do not claim the cost of production is expensive, as it should be minimal, and the cost of review is not factored into production costs. Review is not required.

### B. Reports regarding the performance of plants in Mr. Santangelo's division

In **Document Request No. 22** Plaintiff seeks the production of reports showing how each plant in the division performed during the relevant time period. The exact content is as follows:

> 22. All documents and communications related to the performance of each plant in Crown's aerosol division from January 2010 through December 2014, whether prepared by a Crown employee or a third-party contractor on behalf of Crown, including without limitation, any reports or memos comparing the performance of Crown's aerosol plants during that time period, as well as any monthly financial reports, reports on quality and/or safety, and documents referred to at Crown as 7399s (e.g. financial statements showing information on variances; daily efficiency reports; spoilage reports, quality complaint reports; and safety index statistics) for those plants during that time period. (Exhibit A, p. 12)

These documents are specific to the Aerosol division and include (1) macro variance reports identified as attachments to monthly reports that Tutin sent to his supervisor regarding performance of the plants; (2) PowerPoint presentations showing division performance; and (3) McFadden's reports about plant quality, including those prepared and received by him such as quality reports and audit reports on the implementation of quality measures. All of this material is relevant to showing how Mr. Santangelo was performing relative to his peers at the time of his termination. It is all easily accessible since it is kept by Defendants. Defendant has presented no information as to any burden this would create.

Defendants have suggested that this information is not relevant because purportedly 1) plant *manager* performance is evaluated using different metrics than plant performance and 2) even assuming plant performance was a factor in the decision to terminate Plaintiff's employment, the performance of the different plants cannot be compared because of their different products and product mixes. Defendants' analysis of the similarly-situated prong of the *McDonnell Douglas* test is more rigid than the Seventh Circuit's analysis, which requires that in the "usual" discrimination case, a plaintiff's burden is to show the comparators "1) 'dealt with the same supervisor,' 2) 'were subject to the same standards,' and 3) 'engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'" *Coleman v. Donahoe*, 667 F.3d 835, 847 (7th Cir. 2012), citing *Gates v. Caterpillar, Inc*., 513 F.3d 680, 690 (7th Cir. 2008). "One-to-one mapping between employees" is not required and whether a comparator is similarly situated is "usually a question for the fact-finder." *Coleman*, 667 F.3d at 846-47. Defendants here place the cart before the horse by arguing that the documents requested are not relevant because the other plants are not true comparators to Alsip. The documents requested likely will aid the fact-finder in making that determination. This is discovery, not trial. *See e.g. Saket v. Am. Airlines, Inc*., 2003 WL 685385, *2 (N.D.Ill. Feb. 28, 2003)("The Federal Rules of Civil Procedure contemplate liberal discovery, and 'relevancy' under Rule 26 is extremely broad").

### C. Documents concerning the termination of other plant managers reporting to Tutin

Plaintiff seeks the production of documents concerning the termination of other plant managers who reported to Tutin. These individuals held the same position as Plaintiff, worked during the same time period, and reported to the same supervisor. Moreover, it is Plaintiff's understanding that these individuals, almost all of whom were in their 50s and 60s at the time of termination,

were replaced by significantly younger individuals. The exact content of Plaintiff's request and Defendants' response is provided below:

> 46. All documents, including without limitation any and all communications, concerning the termination of Jim Zahn, Brian McGrath, Brett Shankleton, and Hector Murillo. (Ex. B, p. 8).

Plaintiff compromised and asked for just the information on Jim and Brian McGrath, both of whom Plaintiff knew were replaced by significantly younger individuals. Accordingly, Plaintiff respectfully requests that this Court order Defendants to produce the abovementioned documents, which are reasonably likely to show that Tutin targeted older managers for termination and replaced them with significantly younger individuals.

### D. Documents concerning disciplinary action taken against other supervisors and managers in Mr. Santangelo's plant

**Document Request No. 24**, which seeks information regarding disciplinary actions taken against other supervisors or managers working out of the same plant as Plaintiff. The exact content of Plaintiff's request and Defendants' response is provided below:

> 24. All documents and communications regarding any disciplinary action taken against any supervisor or manager working out of Crown's Alsip facility from January 2012 through December 2014. (Ex. A, p. 13).

This material is relevant because during the last year of his employment with Crown, Plaintiff requested permission to suspend and/or demote certain supervisors and managers working in his plant who failed to perform their jobs effectively. Tutin denied these requests when they came from Plaintiff, and then when these individuals failed to perform (as Plaintiff expected they would), Tutin used their failures against Plaintiff. After Plaintiff's employment was terminated, Tutin approved disciplinary actions or demotions against some, and perhaps all, of the individuals.

## DEFENDANTS' POSITION

Rule 26(b)(2)(C) requires a limitation on discovery if: (i) the discovery is unreasonably

cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, … , the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues. Here, Plaintiff's discovery must be so limited.

### A. Communications about plant managers and plant performance – RFP 34 & 32

Defendant's objection to RFP 34 was:

Defendant objects to this request on the grounds that it is overly broad and unduly burdensome in that it is not limited to any subject matter of the requested communications. Thus, this request seeks every email, memorandum, report, etc. to or from Mr. Tutin for a 2½ year period covering any and all subject matters having nothing whatsoever to do with plaintiff's termination from employment. Although this request provides examples of subject matters of the requested communications, those are just examples and the request seeks all communications to or from Tutin. Moreover, even the examples provided in this request are overly broad and irrelevant. This request amounts to a fishing expedition and is not reasonably calculated to lead to the discovery of admissible evidence.

Without waiving or prejudicing this objection, Defendant has already produced numerous email communications and memoranda to or from Defendant Tutin in response to Plaintiff's RFP 1 and 7.

Its objection to RFP 32 was:

Defendant objects to this request on the grounds that it is overly broad and unduly burdensome in that it is not limited to any subject matter of the requested communications. Thus, this request seeks every email, memorandum, report, etc. to or from Mr. McFadden for a 14 month period covering any and all subject matters having nothing whatsoever to do with plaintiff's termination from employment. This request amounts to a fishing expedition and is not reasonably calculated to lead to the discovery of admissible evidence.

Thereafter, Defendant applied Plaintiff's search terms resulting in over 2000 emails (484,113 KB of data) for RFP 34 and 1000 emails (132,370 KB of data) for RFP 32. Plaintiff wants these 3000+ emails but asked Defendant to exclude and de-duplicate certain ones to determine the time

it would take Defendant to review them for production. Defendant did so resulting in 772 documents for RFP 32 and 929 documents for RFP 34. Plaintiff has not narrowed his requests to any particular subject matter of the communication, and wants them all.

Contrary to Plaintiff's claim, Defendant has repeatedly raised the cost of review and production as an additional basis for its objection. The amount of data uncovered in the searches is estimated at 35 hours to review, and the cost to review is a legitimate basis for denying Plaintiff's request. *Oseman – Dean v. Illinois State Police*, 2011 WL 6338834 at *4 (N.D. Ill. 2011) (plaintiff's request to rummage around through all of the information the defendant has in the hope that something might turn up is not "calculated" let alone "reasonably calculated"); *Kay Beer Distributing, Inc. v. Energy Brands, Inc.*, 2009 WL 1649592 (E.D. Wis. 2009)(denying motion to compel due to the cost of having attorneys review all of the information to determine what is privileged, confidential, or otherwise beyond the scope of discovery).

Defendant has already produced thousands of documents relating to Plaintiff's performance and supporting the reason for his termination, as well as emails discussing Plaintiff favorably and other plant managers unfavorably. Moreover, seven company employees were deposed about this very issue. Given the issue in this case and discovery Defendant already has produced, the burden and expense of this proposed discovery outweighs its likely benefit.

### B. Plant Performance Reports – RFP 22

Defendants objected to this request as follows:

Defendants object to this request on the grounds that it is overly broad and unduly burdensome and seeks information which is, at least in part, irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence, because the type of plant performance documentation requested herein, is broader than the performance issues that factored into the decision to terminate Plaintiff's employment. Additionally, Defendants object to this request because it seeks confidential and proprietary information about its plant operations, and seeks documents beyond the date of Plaintiff's termination.

Without waiving or prejudicing this objection and pursuant to a confidentiality order, Defendants will produce the 7399s for the plants for the period 2010-2013.

First, these reports are irrelevant. As the parties know from the eight depositions taken, plant performance is measured through key performance indicators (KPIs) such as efficiencies, variances, spoilage, etc. However, these are not the same KPIs used to measure the plant <u>manager</u> performance. Those KPIs are communications, interpersonal skills, judgment, initiative etc. and are specifically enumerated in the yearly performance reviews. Defendants' issues with Plaintiff's performance resulting in his termination related to some of the KPIs used to measure plant <u>manager</u> performance, not plant performance. Plaintiff was placed on a PIP eight months before his termination due to plant communication, training, favoritism and lack of respect, lack of decision making, and lack of maintenance and necessary parts. The decision makers testified Plaintiff was terminated for failing to improve and sustain performance in these areas.

Moreover, within the Aerosol Division plant performance cannot be compared on the quantitative plant performance KPIs because the plants produce different products. No one testified Plaintiff was terminated due to the performance of his plant vis-à-vis the others. Accordingly, Plaintiff's broad request for thousands of pages of data measuring the other plants' performances, is simply not relevant nor likely to lead to relevant information.

Second, Defendant produced over a thousand pages of documents regarding performance of plants in the Division. RFP 22 gives examples of the type of documents it is requesting, including "7399s (e.g. financial statements showing information on variances; daily efficiency reports; spoilage reports, quality complaint reports; and safety index statistics)." After objecting, Defendant produced the 7399s for <u>all Aerosol plants</u> for the period 2010-2013, totaling over 300 pages. Additionally, Defendant produced 785 pages of Aerosol Division Monthly Activity Reports

for 2010-2013 containing data on each plant's monthly performance. Thus, Defendant produced 1100 pages of documents on the performance of <u>all</u> Aerosol plants.

Plaintiff has not claimed information is missing from the four years of plant performance documents Defendant has already produced, nor articulated why the documents already produced are insufficient for him to advance his theory of the case. Plaintiff's demand for more and more irrelevant and largely cumulative data must be denied.

Lastly, in an effort to resolve this issue, Defendant offered to look into producing some of the documents McFadden testified to in his deposition even though he did not identify any of them as being dispositive of the issue in this case. Defendant's offer was not enough for Plaintiff who insists on every report or document under the sun regardless of its relevance or the burden.

### C. Documents concerning terminations of other plant managers– RFP 46

Defendant's response to this request was follows:

Defendant objects to this request on the grounds it is overly broad and unduly burdensome because it seeks information about others who are not similarly situated to Plaintiff. Defendant also objects because this request seeks personal and confidential information about others who are not parties to this action. Lastly, Defendant objects to this request because it seeks information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

Without waiving or prejudicing these objections, Hector Murillo voluntarily left the company, and Defendant has already produced the performance, discipline and termination documents for Brett Shankelton.

Thus, Plaintiff did not compromise and ask for information only as to Jim Zahn and Brian McGrath. Rather, Defendant's response revealed it had already produced Shankelton's information and Murillo voluntarily resigned, leaving just McGrath and Zahn. Neither are comparators because McGrath left in 2008 and Zahn in 2009, years before Plaintiff's 2013 termination and before decision maker Bolton was even employed. This request is nothing short of a fishing expedition into ancient history.

9

### D. Disciplinary documents of other supervisors and managers – RFP 24

Defendants' response to this request was:

Defendants object to this request on the grounds that it is unduly vague in its failure to define the term "disciplinary action." Defendants further object to this request on the grounds it is overly broad and unduly burdensome because it seeks information about others who are not similarly situated to Plaintiff, and about discipline imposed by those who were not the decision maker of the employment action at issue in this case. Defendants also object because this request seeks personal and confidential information about others who are not parties to this action. Lastly, Defendants object to this request because the time period for which it seeks information extends past the time period for which Plaintiff was employed.

Without waiving or prejudicing these objections, the information requested in this interrogatory as it relates to Plaintiff, have already been produced in response to other requests. The information requested in this request for written warnings, suspensions or terminations issued to other Alsip supervisors or managers during the period 2012 through 2013, will be produced under a confidentiality order.

Thereafter, Defendant provided the information for the years 2012 and 2013 (but not 2014).

The two supervisors Plaintiff claims he wanted to discipline but couldn't, were Camille Speeks and Rich Rayhill. Defendant produced Speeks' performance reviews, performance improvement plan, and resignation letter, and Plaintiff deposed Tutin and others about Speeks. Similarly, Defendant produced Rayhill's PIP and related documents from 2012 and 2013 and the change notice associated with Rayhill's position change in 2014. Moreover, Plaintiff deposed Rayhill, Tutin and others about Rayhill's discipline. Thus, Plaintiff's motion is moot and Plaintiff has all the evidence he needs to advance his theory. Defendant does not know what more Plaintiff wants, and Plaintiff doesn't explain why the evidence provided is insufficient.

For all the foregoing reasons, Plaintiff's requests in this Motion must be denied.